FILED

2010 Jul-13  PM 03:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARIO JARMON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:08-CV-2106-VEH** |
| | ) | |
| **VINSON GUARD SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on objections filed by Plaintiff Mario Jarmon to the magistrate judge's report and recommendation. (Doc. 49). The magistrate judge filed the report and recommendation on March 5, 2010. (Doc. 48). The magistrate judge recommended that Mr. Jarmon's Motion for Partial Summary Judgment (doc. 31) as to his claims for willful overtime violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 216(b), be **DENIED** and that the Motion for Summary Judgment filed by Defendant Vinson Guard Services, Inc. ("Vinson Guard") (doc. 28) be **GRANTED**. The magistrate judge further noted that Mr. Jarmon had conceded his state law claims and recommended "the entire action is due to be dismissed with judgment in favor of [Vinson Guard]." (Doc. 48, p. 20). The case was reassigned to the undersigned judge on March 5, 2010. (Doc. 48).

On March 24, 2010, Mr. Jarmon filed his objections to the report and

recommendation.  (Doc. 49).  Vinson Guard responded to Mr. Jarmon's objections on April 7, 2010.  (Doc. 51).  This matter is ripe for review.

## FINDINGS OF THE COURT

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify the magistrate judge's report and recommendation.  *See* 28 U.S.C. § 636(b)(1); *Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation omitted).  A district judge must review legal conclusions *de novo*, even in the absence of an objection.  *See Cooper-Houston v. Southern Ry.*, 37 F.3d 603, 604 (11th Cir. 1994); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1431-32 (S.D. Fla. 1993), *aff'd* 28 F.3d 116 (11th Cir. 1994).  That said, the court also acknowledges the principle that "[n]either the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct." *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (citation omitted).  Moreover, absent specific objections, there is no requirement that a district

judge review factual findings *de novo*. *See Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (noting that when a party "did not file specific objections to *factual findings* by the magistrate judge, there was no requirement that the district court *de novo* review those findings") (emphasis in original) (citations omitted).

After conducting a *de novo* review and considering the entire file, the court will **REJECT** the report and recommendation of the magistrate judge. This Memorandum Opinion and accompanying Order will supercede the report and recommendation.

Insofar as Mr. Jarmon has raised the general objection that the magistrate judge's report and recommendation is due to be reconsidered and rejected *in toto*, the objection is due to be **SUSTAINED**. Because the court will reject the report and recommendation in its entirety, the court need not and will not speak directly to Mr. Jarmon's remaining objections, which are set out more fully *infra*. Those objections are, therefore, found to be **MOOT**.

## PROCEDURAL BACKGROUND

Mr. Jarmon commenced this lawsuit against his former employer, Vinson Guard, on November 12, 2008.[1] (Complaint, doc. 1). Mr. Jarmon, who was an hourly employee of Vinson Guard, alleges that Vinson Guard willfully violated the overtime

---

[1] Mr. Jarmon was still employed at the time he filed this case; however, he resigned a few weeks later. The termination of his employment is not an issue in this litigation.

provisions of the FLSA, 29 U.S.C. § 207, by failing to compensate him for all overtime hours he worked while in Vinson Guard's employ. (Complaint, doc. 1, Count One). Specifically, Mr. Jarmon contends that he was not paid overtime for 13.75 hours of work, for certain on-call time, and for taking work related calls on his company cell phone while he was not on duty. He demands liquidated damages and attorney's fees pursuant to 29 U.S.C. § 216(b). Also, Mr. Jarmon brings a state law claim for conversion based on allegations that Vinson Guard wrongfully "withheld certain sums" from his earned wages and used those funds for its own benefit (Complaint, doc. 1, para. 23-24) and a state law claim for breach of contract because of Vinson Guard's alleged failure to pay all money owed to Mr. Jarmon pursuant to an agreement between the parties (at para. 27-29).

Vinson Guard filed an Answer (doc. 4) and a period of discovery followed. Upon the close of discovery, Vinson Guard filed a Motion for Summary Judgment (doc. 28) as to all of Mr. Jarmon's claims. Mr. Jarmon filed a Motion for Partial Summary Judgment (doc. 31) as to his FLSA claims. He did not move for summary judgment on his state law claims. Moreover, in response to Vinson Guard's Motion for Summary Judgment, Mr. Jarmon concedes that his state law claims are due to be

4

dismissed.[2]  (Doc. 39, p. 20).  Therefore, the only issues that remain for adjudication are Mr. Jarmon's FLSA overtime claims.

On March 5, 2010, the magistrate judge entered a report and recommendation on the motions for summary judgment and an order reassigning this case to the undersigned judge.  As noted above, the magistrate judge recommended that summary judgment be entered in favor of Vinson Guard and against Mr. Jarmon as to all claims.  The magistrate judge determined that Mr. Jarmon failed to meet his burden to demonstrate a *prima facie* case for an FLSA overtime violation.  Specifically, the magistrate judge concluded that "Mr. Jarmon has failed to produce any evidence that he has ever worked uncompensated overtime hours, or that Vinson Guard Services, Inc. would have had any reason to know that Mr. Jarmon was due overtime compensation."  (Report and Recommendation, doc. 48, p. 20).

Mr. Jarmon objects to the magistrate judge's finding of fact that it was his fault, and not the fault of Vinson Guard, that there is a lack of documentation regarding his hours worked and the pay he received.  Mr. Jarmon also takes issue with the magistrate judge's finding that there is a total lack of any evidence that Mr. Jarmon worked overtime hours for which he was not compensated.  Mr. Jarmon's objections

---

[2] Accordingly, as discussed more fully below, summary judgment is due to be granted in favor of Vinson Guard and against Mr. Jarmon as to Mr. Jarmon's claims for conversion and breach of contract.

also raise arguments that the magistrate judge generally committed errors when reaching his findings of fact and with regard to the burdens of proof in this case. Finally, Mr. Jarmon objects to the omission from the report and recommendation of his arguments that summary judgment is due to be granted in his favor as to the willful component of his FLSA claim and that he is entitled to an award of liquidated damages and attorney's fees.[3]

On April 7, 2010, Vinson Guard filed a response to Mr. Jarmon's objections. (Doc. 51).  Not surprisingly, Vinson Guard defends the report and recommendation and reiterates many of the arguments it made in its Motion for Summary Judgment.

<u>**SUMMARY JUDGMENT STANDARD OF REVIEW**</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial

---

[3] Since the magistrate judge determined that Mr. Jarmon failed to make out a *prima facie* case for an FLSA overtime violation, it stands to reason that the magistrate judge would rule adversely to Mr. Jarmon on these issues and this court finds that the report and recommendation implicitly, if not expressly, did so.

responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See, e.g., Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See, e.g., Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real*

*Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.* facts that would entitle it to a directed verdict if not controverted at trial.  *See Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it requires the movant to point out

to the court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955);[4] *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996). The court is required to "relate all material facts in genuine dispute in the light most favorable to the party resisting summary judgment." *Serrano-Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 24 (1st Cir. 1997) (citing *Sanchez v. Alvarado*, 101

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

F.3d 223, 225 n.1 (1st Cir. 1996)).  The court will consider each motion independently, and in accordance with the Rule 56 standard.  *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit."   10A Wright, Miller & Kane, *Federal Practice and Procedure:  Civil 3d* § 2720, at 327-28 (1998).

## **FACTUAL BACKGROUND**[5]

Vinson Guard is a company that provides security services and security guards to clients located in the southeastern United States.  (Affidavit of Greg Carter, para. 4).  Mr. Jarmon was employed by Vinson Guard in Birmingham, Alabama, for almost nine months – from March 14, 2008, until he resigned on December 5, 2008.  (*Id.* at para. 1).   He was an hourly paid employee who held the positions of "shift supervisor" and "security guard."  Mr. Jarmon was concurrently employed as both a

---

[5] Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts.  *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party).  This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

10

"shift supervisor" and a "security guard" from March 14, 2008 - October 21, 2008. (Deposition of Greg Carter, pp. 11-12; Affidavit of Greg Carter, para. 10). During the period of concurrent employment, Mr. Jarmon worked primarily as a shift supervisor and acted as a security guard only when he wanted to make extra money. On October 22, 2008, he was relieved of his duties as a shift supervisor as a punishment for failing to complete certain required, daily paperwork,[6] but he remained employed by Vinson Guard as a security guard until he resigned on December 5, 2008. (Deposition of Ronnie Brown, pp. 11-12). Mr. Jarmon was paid at the same hourly rate regardless of whether he worked as a supervisor or as a security guard.[7] (Deposition of Greg Carter, pp. 22-23).

A.    **Mr. Jarmon's job duties.**

In his capacity as a shift supervisor, Mr. Jarmon was responsible for checking various "posts" where security guards were stationed to ensure that the post was staffed and that the guards were performing their duties. (Deposition of Greg Carter, p. 12). The posts are scattered throughout the Birmingham metro area. He was required to use a company car for the purpose of traveling among the various posts. (*Id.* at pp. 17-18).

---

[6] Vinson Guard characterizes this employment action as a demotion.

[7] Therefore, for purposes of calculating overtime, Mr. Jarmon's regular rate is simply his hourly rate.

11

Mr. Jarmon was also issued a company cell phone.  Mr. Jarmon offered deposition testimony that he was told by a supervisor that it was his responsibility to answer incoming calls at all times regardless of whether he was on duty and that he would be terminated if he did not answer his phone.  (Deposition of Mario Jarmon, p. 68).  Vinson Guard claims that Mr. Jarmon was only to answer the phone while he was on duty or on-call, meaning that he was only to answer calls on his company phone during his scheduled shift.  (Deposition of Greg Carter, pp. 44-47).  Otherwise, Mr. Jarmon was to route calls through a central dispatcher while he was not on duty or on-call.  (*Id.*).  Mr. Jarmon, however, understood that he was on call every day of the year and every hour of the day.  (Deposition of Mario Jarmon, pp. 82-83).

Finally, Mr. Jarmon was responsible for filling out paperwork.  Based on the record, Mr. Jarmon was required to fill out a "shift supervisor report" and a "trip sheet" for each shift he worked.  (Deposition of Greg Carter, pp. 13-14).  Also, it appears as though Mr. Jarmon was expected to complete a "guard report" for those times he served as a security guard.  (*Id.*).  According to Vinson Guard, the purpose of these reports is to provide it with documentation of Mr. Jarmon's activities and whereabouts during a scheduled shift.  (*Id.*).  When preparing the paperwork, Mr. Jarmon was tasked with documenting every event of his day's work from the minute he arrived until he completed his work. (Deposition of Mario Jarmon, pp. 88-89).

It is undisputed that Mr. Jarmon would sometimes submit paperwork that was incomplete.  It was Vinson Guard's policy to call employees who failed to turn in their paperwork back into work.  (Deposition of Mario Jarmon, pp. 91-93).  Mr. Jarmon's direct supervisor would, "once in a blue moon," insist that he return to work to turn in his paperwork.  (Deposition of Mario Jarmon, p. 93).  Mr. Jarmon testified that he submitted all required paperwork to Vinson Guard during his employment. (Deposition of Mario Jarmon, p. 93).  On the other hand, Vinson Guard has presented evidence that all paperwork was not turned in.  (Affidavit of Greg Carter, para. 11). It is undisputed that Mr. Jarmon was eventually demoted from his supervisor position because he failed to properly and completely fill out the "trip sheets."  (Deposition of Ronnie Brown, p. 11).

Mr. Jarmon's immediate supervisors, the branch managers, were not keeping or checking Mr. Jarmon's daily paperwork "like they should have been." (Deposition of Greg Carter, pp. 78-79).  It was also the branch manager's job to "warn [Mr. Jarmon] about turning in his paperwork properly, which I do not think that's what happened in [Mr. Jarmon's] case."  (*Id.*).  In other words, the on-the-ground supervisor did not always keep records nor did he regularly check employee records for accuracy.

13

## B.      The paperwork.

The supervisor reports and trip sheets are important in this case inasmuch as they have been the subject of much debate between the parties.  According to Vinson Guard, the trip sheet and supervisor report evidenced "what posts [Mr. Jarmon] visited, and . . . the log of telephone calls that he handled, and [were] basically a journal or itinerary of his actions during his time of call . . . ."  (Deposition of Greg Carter, p. 13).  Vinson Guard makes the argument that these reports are actually "time sheets" and attempts to use these reports to examine Mr. Jarmon's activities during his workday to determine what activities were work for purposes of compensation. (Deposition of Mario Jarmon, pp. 205-206).  As discussed more fully below, while the evidence of record demonstrates that these reports have some relationship to the hours Mr. Jarmon worked and that they could impact the amount Mr. Jarmon was paid in overtime, the trip sheets and supervisor reports were not the sole or primary basis of Mr. Jarmon's pay nor were they reflective of his scheduled shift.  Mr. Jarmon testified that his employment records, including the trip sheets and supervisor reports, that have been produced by Vinson Guard in this litigation are incomplete. (Deposition of Mario Jarmon, pp. 137-138, 204).  Mr. Jarmon also testified that the paperwork was unreliable.  (*Id.* at pp. 153-154).

### C.     Mr. Jarmon's immediate supervisor, schedule, and pay.

Mr. Jarmon answered directly to the "branch manager" or "operations manager."[8]  There were two different branch managers during Mr. Jarmon's tenure with Vinson Guard.  (Deposition of Greg Carter, p. 50).  The first was Dennis Garner.  (*Id.*).  Mr. Garner was the branch manager until sometime in September 2008, when he was replaced by Ronnie Brown.  Plaintiff told Mr. Garner, "a few times," that he believed he was not being paid correctly.  (Deposition of Mario Jarmon, pp. 76-77).  Mr. Garner refused to address Plaintiff's complaints.  (*Id.*).  Mr. Brown, who demoted Plaintiff for failing to properly fill out his paperwork, testified that it is a branch manager's job to keep overtime "to a minimum."  (Deposition of Ronnie Brown, pp. 10, 21-22).  The branch manager also created Mr. Jarmon's work schedule, and it was the branch manager's responsibility to receive the various reports from Mr. Jarmon at the end of each shift.  (Deposition of Greg Carter, pp. 13-14).

In his capacity as a shift supervisor, Mr. Jarmon normally worked what the parties refer to as a "48 hour schedule."  That terminology, however, is somewhat misleading.  He was paid for 48 hours of scheduled work each week (40 hours at his regular rate and 8 hours of overtime).  (Affidavit of Greg Carter, para. 7).  That said,

---

[8] During Mr. Jarmon's employ, in the Birmingham office, the branch manager and operations manager positions were filled by one person.  Therefore, the distinction between the two titles, if any, is irrelevant for purposes of this case.

he has presented evidence that he worked or was on-call for more than 48 hours each week.  For example, Mr. Jarmon was normally scheduled to work at least one 24-hour shift each week for which he was only paid for 14 hours of work.  (Deposition of Greg Carter, pp. 41-42, 76-78).  Mr. Jarmon usually worked Wednesday, Thursday, and Friday nights, as well as at least some amount of time most Saturdays.  The decision to pay Mr. Jarmon for 14 hours of a 24 hour shift was made by Vinson Guard and was based on a formula, not on the actual hours Mr. Jarmon worked.  (*Id.* at pp. 76-78).  This 10 hour deduction was also applied to shifts that were less than 24 hours in duration.  (*Id.* at p. 97).  Vinson Guard's schedule evidences that the 10 hour deduction is taken for "lunch."  (*Id.* at 91-93).  Mr. Jarmon also answered work calls while off-duty.  (Deposition of Mario Jarmon, pp. 68-69).  Moreover, Vinson Guard concedes that there are 13.75 hours of work Mr. Jarmon performed for which he was not compensated.  (Doc. 29, p. 11).

Vinson Guard paid Mr. Jarmon based on the hours he was scheduled to work. (Affidavit of Greg Carter, para. 7).  If Mr. Jarmon worked additional overtime hours beyond those which he was scheduled, Vinson Guard contends that it was Mr. Jarmon's responsibility to notify his supervisor and to provide evidence that he worked additional hours.  (Deposition of Greg Carter, p. 61).  At the time of Mr. Jarmon's employment, employees were to fill out a form requesting additional

overtime and submit evidence for review by supervisors.  (*Id.*)  Mr. Jarmon never

filled out such a report (deposition of Mario Jarmon, p. 77), and there is no evidence

of record that he was instructed on this procedure or policy.

To summarize, Mr. Jarmon's direct supervisor, the branch manager, was

responsible for making Mr. Jarmon's schedule, receiving the daily paperwork,

ensuring that it was complete, and for keeping overtime low.  Instead of being paid

based on the time between the first and last activities of his shift, Mr. Jarmon was

paid for the hours he was scheduled to work, which usually included at least eight

hours of overtime pay each workweek.  Vinson Guard's policy was to pay additional

overtime only if Mr. Jarmon made a written complaint and substantiated his claim

with evidence.  There is no evidence of record that Mr. Jarmon was informed of

Vinson Guard's policy.

<u>**DISCUSSION**</u>

**I.**  **Mr. Jarmon concedes that his state law claims are due to be dismissed.**

Mr. Jarmon, in his Complaint, asserts the state law claims of conversion (Count

Two) and breach of contract (Count Three).  In response to Vinson Guard's Motion

for Summary Judgment, Mr. Jarmon concedes that his state law claims are due to be

dismissed.  (Doc. 39, p. 20).  Accordingly, summary judgment is due to be

**GRANTED** in favor of Vinson Guard and against Mr. Jarmon as to Mr. Jarmon's

claims for conversion and breach of contract.

**II.    Mr. Jarmon's FLSA claims**.

> **A.    Mr. Jarmon's specific claims and the parties' summary judgment arguments.**

Mr. Jarmon's FLSA claims are relatively straightforward.  He claims that he was not paid overtime for the following hours: (1) 13.75 hours of time which it is undisputed that Mr. Jarmon worked but for which he did not receive any compensation; (2) the 10 hour "lunch" periods that were deducted from certain shifts he worked; and (3) time spent answering his company cell phone while he was not on-duty.  Vinson Guard argues that Mr. Jarmon is not entitled to any additional overtime because he did not keep his time records properly and because, despite the admitted 13.75 hours Mr. Jarmon worked without compensation, Vinson Guard is entitled to a set-off for overtime premiums that it overpaid to Mr. Jarmon and that those overpaid overtime premiums are greater than any damages Mr. Jarmon could recover in this case.

> **B.    The FLSA's overtime provisions and Mr. Jarmon's burden of proof.**

Under the Fair Labor Standards Act ("FLSA"), employers are required to pay overtime to employees who are "employed" more than forty hours per week.  29 U.S.C. § 207(a)(1); *see also Dade County v. Alvarez*, 124 F.2d 1380, 1384 (11th Cir.

1997).  The term "employ" is defined as "to suffer or permit work."  29 U.S.C. §

203(g); *see also Reich v. Dep't. of Conservation and Natural Ress., State of Ala.*, 28

F.3d 1076, 1082 (11th Cir. 1994).  The FLSA establishes certain requirements for

employers, including a minimum wage to be paid to employees, a maximum number

of hours to be worked at a regular pay rate, and a requirement of overtime pay.  The

general maximum hour provisions require that employers pay one and one-half times

the "regular rate" of pay for overtime hours.  *See* 29 U.S.C. § 207(a)(1).  Although

the statute does not define "regular rate," the Supreme Court has stated that "the

regular rate refers to the hourly rate actually paid the employee for the normal, non-

overtime workweek for which he is employed."  *See* 29 C.F.R. § 778.108; *see also*

*Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945).  The

Department of Labor has adopted this definition and stated that the regular rate

cannot be less than the minimum wage.  29 C.F.R. §§ 778.107, 778.108.

In order for Mr. Jarmon to recover for uncompensated overtime work under the

FLSA, he "must prove that [he was] suffered or permitted to work without

compensation."  *Allen v. Board of Public Education for Bibb County*, 495 F.3d 1306,

1314 (11th Cir. 2007).  In other words, he is required to show that: (1) he worked

overtime hours without compensation, and (2) that Vinson Guard had knowledge, or

should have had knowledge, of his overtime work.  *See Anderson v. Mt. Clemens*

*Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 1192 (1946), *see also Reich*, 28 F.3d

at 1082 (11th Cir. 1994).  Therefore, a plaintiff's burden of proof is twofold.  That

said, a plaintiff's burden to show that he worked overtime hours without

compensation is greatly lessened where an employer failed to keep adequate records.[9]

> **1.    Contrary to the requirements of the FLSA, Vinson Guard failed to keep adequate and accurate records of the hours actually worked by Mr. Jarmon and the compensation he received.**

As the Eleventh Circuit recently discussed,

> Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, "[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).  It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment.  *Id.*  The employer is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed and "[e]mployees seldom keep such records themselves." *Id.*

*Allen*, 495 F.3d at 1315.  The employer's records must be "precise" regarding the

hours an employee worked and the amount of compensation paid for those hours for

each workweek.  *Olson v. Superior Pontiac-GMC, Inc.*, 776 F.2d 265, 266 (11th Cir.

---

[9] *Nota bene*: The FLSA does not permit an employee to bring a private action against his or her employer for record keeping violations.  *See Elwell v. University Hospitals Home Care Services*, 276 F.3d 832, 843 (6th Cir. 2002).  "Authority to enforce the Act's recordkeeping provisions is vested exclusively in the Secretary of Labor."  *Id.*

1985).  Contrary to Vinson Guard's position in this case – *i.e.*, that Mr. Jarmon bears the primary responsibility of keeping records of his time – it is well-settled in the Eleventh Circuit that the function of record-keeping as required by the FLSA falls on the employer, that the task cannot be properly delegated to employees, and that any such delegation does not excuse an employer for any neglect or inadequacy in the records that are produced by the employee.  *See*, *e.g.*, *Kline v. Wirtz*, 373 F.2d 281, 282 (5th Cir. 1967) (under the FLSA, an employer has the obligation to maintain accurate time and wage records); *Wirtz v. Williams*, 369 F.2d 783, 785-85 (5th Cir. 1966) (an employer who did not record the number of hours his truck drivers actually worked but based the drivers' wage by multiplying an estimate of normal driving time by the number of trips a driver made failed to keep accurate daily and weekly records of the hours worked by each employee); *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603, 607 (5th Cir. 1966); *Wirtz v. Harrigill*, 328 F.2d 963, 964-65 (5th Cir. 1964) (employer has the duty to keep time records); *Goldberg v. Cockrell*, 303 F.2d 811, 812-13 (5th Cir. 1962) (an employer cannot transfer its statutory duty to keep accurate records to its employee); *Mitchell v. Mitchell Truck Line, Inc.*, 286 F.2d 721, 725-26 (5th Cir. 1961) (an employer who fails to keep adequate records is in no position to complain about the uncertainty of evidence with regard to hours worked and compensation paid); *see also Donovan v. Kentwood Development Co., Inc.*, 549

21

F. Supp. 480, 490 (D. Md. 1982) (there is no good faith defense to excuse an employer's failure to keep records as required by the FLSA).

In the present case, Vinson Guard failed to keep adequate records. The paperwork related to Mr. Jarmon's employment is undisputedly incomplete. Furthermore, it is incomprehensible. Three depositions appear in the record: Mr. Jarmon's, Greg Carter's, and Ronnie Brown's. The depositions were filed by both Mr. Jarmon and Vinson Guard. In the depositions of Mr. Jarmon and Mr. Carter, the deponents were questioned at length about employment records, which were made exhibits to the depositions. Those deposition exhibits, however, are not appended to the depositions filed with this court and there is no explanation as to where those records might otherwise be found in the record. Therefore, any reference to those deposition exhibits within the depositions themselves are totally unhelpful to this court.

Vinson Guard attached paperwork to Greg Carter's affidavit (docs. 30-1 - 30-6) with only a cursory explanation as to its contents or significance. The attached evidence appears to be various employment records and paperwork regarding Mr. Jarmon; however, the court cannot be sure and will not speculate as to the contents of that paperwork. Also, Vinson Guard offered into evidence 173 pages of telephone records, again without any discussion as to how the court should interpret those

22

records or as to their overall significance.

For his part, Mr. Jarmon has introduced seemingly incomplete employment records from certain days – *i.e.*, May 7, 2008, October 5, 2008, and October 7, 2008 – as representative of FLSA violations.[10]  Those records, however, do not evidence the hours worked by Mr. Jarmon or the compensation he received on those dates. Also, Mr. Jarmon filed "phone records" from various dates with no adequate explanations as to how the court should analyze those particular records.

While the court has examined all evidence in the summary judgment record, much of the paperwork is useless.  The parties seem to be operating under the assumption that this court is able, without guidance from the parties, to trudge through hundreds of pages of paperwork in an effort to guess as to its origin and evidentiary value.  That faulty assumption weighs heavily on Vinson Guard because it bears the burden to show that it has kept accurate records of the time Mr. Jarmon worked and the compensation he was paid, and it has not done so based on the summary judgment record.  The parties have not identified and the court cannot unearth any employment records that, when taken alone or in concert, could be construed as accurate, much less "precise."  *See Olson*, *supra.*  This conclusion is

---

[10] Vinson Guard has admitted that it failed to pay Mr. Jarmon as follows: (1) for 3.5 hours on May 7, 2008; (2) for 1.25 hours on October 6, 2008; and (3) for 9 hours on October 7, 2008. (Doc. 40, pp. 5-6).

bolstered by the deposition testimony of Vinson Guard's Rule 30(b)(6) representative, Greg Carter, who could not, under examination, make heads or tails of the employment records and who failed to offer any testimony regarding a method by which one could examine the records that were kept by Vinson Guard to determine exactly when Mr. Jarmon worked and what he was paid.  Vinson Guard can only speculate when Mr. Jarmon actually worked, in part because it had a policy in place to pay Mr. Jarmon based on his scheduled hours unless he raised the alarm that he worked additional overtime hours and produced evidence to support his claim. (Deposition of Greg Carter, pp. 76-80).

Vinson Guard places the blame for the shoddy trip reports at the feet of Mr. Jarmon, who admitted to not always completing, but to always turning in, his daily paperwork.  However, that blame falls flat.  Vinson Guard, not Mr. Jarmon, has the duty under the FLSA to keep accurate records.  Moreover, it is undisputed that Mr. Jarmon's direct supervisor had the responsibility to check the daily paperwork to ensure that it was complete and accurate; however, the supervisor admittedly did not always follow through with that task during Mr. Jarmon's employment.  (Deposition of Greg Carter, pp 78-79).   Vinson Guard cannot shift its record keeping responsibility to its employees; Vinson Guard must live with the consequences of its incomplete records.  *See Allen*, 495 F.3d at 1315 (citation omitted).

24

What the undisputed evidence in this case demonstrates is that Vinson Guard, the party who bears the burden to keep precise and accurate records of Mr. Jarmon's hours worked and his payment history, offered into evidence an incomplete record and an enigmatic discussion as to how the court should construe the employment records that are in evidence.  Accordingly, the court finds that Vinson Guard has failed to demonstrate that, in compliance with the FLSA, it kept precise, adequate, and accurate records of Mr. Jarmon's compensation and hours worked.[11]

---

[11] Vinson Guard argues that Mr. Jarmon is estopped from claiming that he worked more hours than are evidenced on his trip sheets, which Vinson Guard refers to as "time sheets."  In support of that contention, Vinson Guard relies chiefly on the former-Fifth Circuit's decision in *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324 (5th Cir. 1972) and a more recent Fifth Circuit case, *Newton v. City of Henderson*, 47 F.3d 746 (5th Cir. 1995).  Vinson Guard's reliance on *Brumbelow* and *Newton* is misplaced.

It is true that the former-Fifth Circuit held in *Brumbelow* that an employee was estopped, in an FLSA overtime case, from claiming that she worked more hours than she reported on her time sheets.  *See* 462 F.2d at 1327.  The Court also acknowledged that estoppel is defeated if a "court found that the employer knew or had reason to believe that the reported information was inaccurate."  *Id.*  In the present case, assuming for the sake of argument that the trip sheets are akin to time sheets, it is undisputed that Vinson Guard knew that the trip sheets were inaccurate.  Therefore, *Brumbelow*, in fact, stands for the proposition that estoppel should not apply in this case.

In *Newton*, a DEA agent claimed he was owed overtime compensation.  The agent was warned that he must obtain prior approval before working overtime, but he ignored that procedure.  Also, the agent did not report the overtime on his time sheet nor was there evidence that he was encouraged by his employer to falsify his time records.  *Newton*, 47 F.3d at 750.  Under those circumstances, the Court found that the employer did not violate the overtime provisions of the FLSA.  Those facts are distinguishable from this case such that *Newton* is not persuasive.  For example, there is no evidence in this case that Mr. Jarmon was required to seek and receive approval before he worked overtime hours, but that he was to report any overtime hours he did work to his supervisor.  Mr. Jarmon testified that he told his supervisor that he believed he was not being paid accurately, and that the supervisor refused to investigate the matter.  Also, it is not clear from the evidence that the "trip sheet" is the equivalent of a "time

> **2.    Mr. Jarmon has met his burden to come forward with evidence sufficient to support a *prima facie* case of FLSA overtime violations; however, genuine issues of material fact preclude summary judgment.**

Because the records kept by Vinson Guard are incomplete and inadequate, and given that Mr. Jarmon has not put forward records of his own, the burden of proof placed on Mr. Jarmon is greatly reduced.

In *Anderson*, the Court noted that if an employer has failed to keep proper and accurate records and the employee cannot offer convincing substitutes,

> [t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.

*Id.*

Thus, in situations where the employer's records cannot be trusted and the employee lacks documentation, the Supreme Court held "that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* The burden then becomes the employer's, and it must bring forth either evidence of the

sheet."

Therefore, the court rejects Vinson Guard's estoppel argument.

precise amount of work performed or evidence to negate the
reasonableness of the inference to be drawn from the employee's
evidence. *Id.* at 687-88, 66 S.Ct. 1187. "If the employer fails to
produce such evidence, the court may then award damages to the
employee, even though the result be only approximate." *Id.* at 688, 66
S.Ct. 1187.

*Allen*, 495 F.3d at 1315. A plaintiff can meet his burden through deposition

testimony, affidavit, or declaration. *Id.* at 1315-17. Also, a plaintiff can show the

amount and extent of overtime work by identifying "triggering factors" that indicate

work was being or about to be performed or by testifying to regular events that

constitute overtime work. *Id.* at 1317.

In this case, Vinson Guard has admitted that it failed to compensate Mr. Jarmon

for a "reported . . . total of 13.75 hours . . . ." (Brief in Support of Defendant's

Motion for Summary Judgment, doc. 29, p. 11). Mr. Jarmon was usually, but not

always, scheduled to work 48 hours each week. That said, it is unclear, based upon

the record, as to whether those 13.75 hours, or a portion of those hours, are

overtime.[12] As such, a genuine issue of material fact exists.

Furthermore, Mr. Jarmon has presented evidence that, if believed, demonstrates

that he either worked or was on-call for the entirety of several 24 hour shifts but that

---

[12] Viewing the facts and evidence in a light most favorable to Mr. Jarmon, and in the
absence of adequate and complete records, it is certainly plausible that a jury could find that the
entire 13.75 hours are overtime hours given that Mr. Jarmon usually was scheduled to work at
least 8 hours of overtime each workweek.

Vinson Guard always deducted 10 hours for a "lunch" period and therefore only paid him for 14 hours unless he could prove that he worked more than 14 hours.  Also, there are shifts when Mr. Jarmon worked or was on-call less than 24 hours, but 10 hours were again deducted by Vinson Guard from his reported work time for a "lunch" period.  Vinson Guard has presented evidence, mostly through the deposition testimony of Greg Carter, that Mr. Jarmon only worked for a maximum of 14 hours during the 24 hour shifts and that he was on-call for the remainder of the time.[13]  There is also conflicting evidence regarding Mr. Jarmon's duties while he was on-call.[14]  These issues of fact must be sorted out by a jury.

Finally, as to Mr. Jarmon's contention that Vinson Guard did not pay him overtime for time he spent taking work related phone calls on his company cell phone

---

[13] On-call time is generally compensable if the employee "is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes[.]" 29 C.F.R. § 785.17.  *See also Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 807 (11th Cir. 1992).  However, on-call time is not compensable if an employee is not required to remain on the premises but merely has to be reachable by his employer and ready to return to duty if needed.  *Id.*  The readiness to return to duty cannot so encroach upon the employee's personal time as to deny the employee the opportunity to use the time for his own purposes.  *See Birdwell*, 970 F.2d at 807-808.

[14] In the present case, there is scant but competing evidence as to what Mr. Jarmon's requirements were during his on-call periods.  The Eleventh Circuit has stated that "[i]t is for the court to determine if a set of facts gives rise to liability; it is for the jury to determine if those facts exist."  *Dade County, Fla. v. Alvarez*, 124 F.3d 1380, 1383 (11th Cir. 1997) (quoting *Birdwell*, 970 F.2d at 808).  Viewing that competing evidence in the light most favorable to Mr. Jarmon, a jury issue remains as to how much, if any, of Mr. Jarmon's on-call time should have been compensated.

during his off-duty time, there is conflicting evidence as to the number of those calls, whether Mr. Jarmon was directed to take the calls or that he would face disciplinary action (up to and including termination of employment) if he did not, and whether Mr. Jarmon's taking of calls while off-duty was for the benefit of Vinson Guard. Insofar as summary judgment is concerned, Mr. Jarmon has come forward with evidence that he took some calls while off-duty, that the time spent on those calls was overtime, and that Vinson Guard did not pay him for the time.  Also, there is evidence of record, mostly in the form of phone bills, that could establish the amount of time Mr. Jarmon spent on off-duty work calls if the records are found to be credible by a jury.[15]

Finally, Mr. Jarmon stated under oath that he told his supervisor, Dennis Garner, that he was being underpaid, but nothing was ever done about his complaints, and he was never told that company policy required him to fill out a form to make the complaint.  (Deposition of Mario Jarmon, p.76, l. 16 - p. 77, l. 10).

In short, there are disputed genuine issues of material fact that preclude

---

[15] There is no evidence in the record at present such that one could examine the phone records, either standing alone or in tandem with other evidence, and discern what calls were made or received while Mr. Jarmon was off-duty.  Also, Mr. Jarmon admits to using the phone for personal calls as well as to loaning the phone to other Vinson Guard employees for their use.  Vinson Guard, on at least one occasion during Mr. Jarmon's employment, undertook a detailed audit of Mr. Jarmon's phone records for the purpose of determining whether calls were personal or work related.  The evidentiary weight of the phone records, however, is not for this court to decide on summary judgment.

summary judgment as to Mr. Jarmon's overtime claims.  When there is conflicting evidence requiring a credibility determination, the issue of whether an employee has been paid all overtime which he earned is a jury question.  *See Etienne v. Inter-County Sec. Corp*, 173 F.3d 1372, 1374 (11th Cir. 1999).  The court finds that, when viewing the evidence in a light most favorable to Mr. Jarmon, he has come forward with sufficient evidence to demonstrate that he worked overtime hours for which he was not compensated and that he could, at trial, demonstrate those hours by a just and reasonable inference.  *See Allen*, *supra.*

### 3.    **Vinson Guard's Actual or Constructive Knowledge**

To survive Vinson Guard's Motion for Summary Judgment,[16] Mr. Jarmon must also make a showing that Vinson Guard had actual or constructive knowledge that he was working overtime without pay.  *See Anderson*, 328 U.S. at 687.  Mr. Jarmon's overtime claims are "viable if a reasonable jury could conclude from the evidence that [Vinson Guard] had actual or constructive knowledge."  *Allen*, 495 F.3d at 1318. Vinson Guard insists that, even if Mr. Jarmon worked overtime hours for which he was not compensated, Mr. Jarmon's *prima facie* case fails for lack of proof that Vinson Guard knew or should have known of the situation.  That argument, however,

---

[16] The genuine issues of material fact discussed *supra* preclude the granting of summary judgment in Mr. Jarmon's favor as to his FLSA overtime claims.

is disputed by some of the evidence in this case.

On a few occasions, Mr. Jarmon complained to his branch manager that he was not being paid properly. (Deposition of Mario Jarmon, pp. 76-77). Those reports create a question as to Vinson Guard's actual knowledge.[17] *See Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1353 (5th Cir. 1980) ("Knowledge will generally be imputed to the offending employer.") (quoted with approval in *Allen*, 495 F.3d at 1318-19). Also, it is undisputed that Mr. Jarmon was not paid for 10 hours of many 24 hour "shifts" pursuant to a plan and policy employed by Vinson Guard. While it has not yet been determined whether that practice violates the overtime provisions of the FLSA, Vinson Guard certainly had actual knowledge of the practice. The preceding facts create a question of material fact as to whether Vinson Guard had actual knowledge of alleged overtime violations.

The record also contains evidence which, if believed, suggests that Vinson Guard had constructive knowledge.

> An employer is said to have constructive knowledge of its employee's overtime work when it has reason to believe that its employee is working beyond his shift. 29 C.F.R. § 785.11. The

---

[17] Vinson Guard contends that this court should weigh and make a credibility determination regarding Mr. Jarmon's deposition testimony as to his reporting perceived pay discrepancies to his supervisor. Vinson Guard implies that the testimony is ambiguous at best as to whether Mr. Jarmon complained that he was not being paid enough overtime or that he was not being paid enough generally. This court cannot make such a credibility finding on summary judgment and must view the evidence in a light most favorable to Mr. Jarmon.

employer's knowledge "is measured in accordance with his 'duty ... to inquire into the conditions prevailing in his business.'" *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969) (quoting *People ex rel. Price v. Sheffield Farms-Slawson-Decker Co.*, 225 N.Y. 25, 121 N.E. 474 (1918)).

There is no violation of the FLSA where the employee performs uncompensated work but deliberately prevents his or her employer from learning of it.[18] *Forrester v. Foodliner*, 646 F.2d 413, 414 (9th Cir. 1981). However, our predecessor court stated that when an employer's actions squelch truthful reports of overtime worked, or where the employer encourages artificially low reporting, it cannot disclaim knowledge. *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 828 (5th Cir.1973).

*Allen*, 495 F.3d at 1319.

In the instant case, during the discovery period, the parties learned that Mr. Jarmon worked 13.75 hours for which he was not paid over a period of roughly nine months. It would seem that an employer that exercised reasonable diligence would have discovered this discrepancy. Moreover, Vinson Guard's Rule 30(b)(6) deponent testified that the branch managers were not keeping or checking Mr. Jarmon's daily

---

[18] Vinson Guard argues that Mr. Jarmon deliberately prevented it from learning of any overtime hours he worked without compensation by failing to completely fill out the daily trip sheets. The court finds this argument flawed on several fronts; however, only one observation is needed to defeat the point. Vinson Guard has not directed the court to any evidence, and the court has not stumbled upon any in the record, that even hints that Mr. Jarmon took intentional or deliberate actions to prevent Vinson Guard from learning that he worked overtime hours without compensation. Absent such intentional or deliberate actions by Mr. Jarmon, and particularly in light of Mr. Jarmon's complaints to Mr. Garner that Mr. Jarmon was being underpaid, the general rule that an employer may not transfer to its employee the employer's burden of keeping accurate records applies.

paperwork "like they should have been." (Deposition of Greg Carter, pp. 78-79).

Vinson Guard also undertook a thorough investigation of Mr. Jarmon's phone records so that it could be compensated by Mr. Jarmon for the personal calls he made on his work phone. A jury could find, based on that investigation, that Vinson Guard gained constructive knowledge or reasonably could have discovered that Mr. Jarmon was receiving work related calls on his company phone while off-duty. Mr. Jarmon's testimony that he was told by his supervisor that he must take work calls while off-duty, for which it is undisputed he was not compensated, could be interpreted by a jury to be a practice of Mr. Jarmon's immediate supervisor of squelching truthful overtime reporting. *See Brennan v. General Motors Acceptance Corporation*, 482 F.2d 825, 828 (5th Cir. 1973) ("The company cannot disclaim knowledge when certain segments of its management squelched truthful responses.").

The court finds, therefore, that there are genuine issues of material fact as to whether Vinson Guard had actual or constructive knowledge such that Mr. Jarmon's overtime claims will survive summary judgment but that preclude an award of summary judgment in his favor.

### C.    Vinson Guard is not entitled to a set-off.

Vinson Guard argues that, even if one assumes that Mr. Jarmon was not paid overtime for the hours he claims, that there is no liability in this case. In support of

33

that position, Vinson Guard asserts that it grossly overpaid Mr. Jarmon "for at least

460.25 hours" throughout the duration of his employment and that it is entitled to an

set-off for those overpayments under the Eleventh Circuit's holding in *Kohlheim v.*

*Glynn County, Georgia*, 915 F.2d 1473 (11th Cir. 1990). (Doc. 29, p. 11).

Specifically, Vinson Guard argues that, based on its interpretation of *Kohlheim*,

"where the employer has paid for hours *not* worked by the employee, the employer

is entitled to a credit against any allegedly unpaid overtime."[19] (Vinson Guard's Brief

in Support of Summary Judgment; doc. 29, p. 10) (emphasis in original). After

carefully studying *Kohlheim*, the court finds that it is distinguishable from the present

action and that Vinson Guard has overstated the holding in that case.

Before addressing Vinson Guard's *Kohlheim* argument, the court will first set

the stage with regard to permissible set-offs for overtime premiums. "Certain

premium payments made by employers for work in excess of or outside of specified

daily or weekly standard work periods or on certain special days are regarded as

overtime premiums." 29 C.F.R. § 778.201(a). Under Section 7 of the FLSA, "this

---

[19] Vinson Guard presents its *Kohlheim* argument as one that cuts against Mr. Jarmon's
ability to make out a *prima facie* case of an FLSA overtime violation. In other words, Vinson
Guard argues that a set-off is to be considered as weighing against a liability determination. On
that point, Vinson Guard is incorrect. *Kohlheim* expressly states that a set-off is to be considered
"during the damages phase of the trial." 915 F.2d at 1481. Therefore, even if Vinson Guard
were entitled to a set-off, that fact does not come into play until after a liability determination has
been made in Mr. Jarmon's favor.

extra compensation may be credited toward the overtime payments required by the

Act." *Id.*   There are only three types of extra premium payments which may be

treated as overtime premiums for purposes of a set-off.  *See* 29 C.F.R. § 778.201(b);

29 U.S.C. § 207(e)(5)-(7).   Set-offs for extra premium overtime pay are permissible

in the following situations when an employer paid:

> (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;

> (6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;

> (7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section, where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek . . . .

29 U.S.C. § 207(e)(5)-(7).  "Section 7(h) of the Act specifically states that the extra

compensation provided by these three types of payments may be credited toward

overtime compensation due under section 7(a) for work in excess of the applicable maximum hours standard." 29 C.F.R. § 778.201(c).  However, the set-off exceptions for overtime premiums set out in 29 U.S.C. § 207(e)(5)-(7) are only applicable if there is a collective bargaining agreement or employment contract at issue between employer and employee.  *See* ELLEN C. KEARNS, THE FAIR LABOR STANDARDS ACT 589 (1999) ("In order to qualify for an overtime exclusion [described in 29 U.S.C. §§ 207(e)(5-7)], however, the premium must be paid because work is performed outside of or in excess of contractually established daily or weekly work hours or because work is done on certain special days, such as holidays or weekends, and not for some other reason.") (citing 29 U.S.C. § 207(e)(5-7); 29 C.F.R. § 778.201(a)); *see also* 29 C.F.R. §§ 778.202-778.206.

Based on the evidence and claims in this case, 29 U.S.C. § 207(e)(6)-(7) are not applicable on their face.  The only provision that could have possibly provided any relief for Vinson Guard in the form of a set-off is 29 U.S.C. § 207(e)(5).  However, because there is no evidence of a collective bargaining agreement or an employment contract in this case, § 207(e)(5) is not applicable.

Even if § 207(e)(5) were applicable, Vinson Guard has not shown that it paid extra overtime premiums to Mr. Jarmon for work he did not perform.  Vinson Guard contends that it overpaid Mr. Jarmon for work that he never performed.  The method

by which Vinson Guard reaches this conclusion is suspect in that it appears as though Vinson Guard has dissected Mr. Jarmon's continuous workday (primarily by referring to the trip sheets) in order to determine when he was, in Vinson Guard's opinion, working or not.  That practice runs afoul of the maxim that, once an employee's workday starts, the employer must compensate that employee for hours spent on the job, with the exclusion of applicable bona fide meal periods and breaks, until the employee completes his last principal activity of the shift.[20]  *See IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) (holding that time spent walking from a locker room to a production line was compensable under the FLSA because, in part, the workday begins with the first principal activity and ends with the last principal activity).  This court will not allow Vinson Guard to break the continuous workday down in this manner into subsets of compensable versus non-compensable time.

Turning to Vinson Guard's *Kohlheim* argument, the Court in that case held that, under the provisions of 29 U.S.C. § 207(h), an employer who was subject to a collective bargaining agreement was "allowed to set-off all previously paid [extra] overtime premiums . . . against overtime compensation found to be due and owing

---

[20] "Workday in general means the period between the time on any particular workday at which such employee commences his principal activity . . . and the time . . . at which he ceases such principal activity."  29 C.F.R. § 785.9 (internal marks omitted).  "The 'workday' may thus be longer than the employee's scheduled shift, hours, tour of duty, or time on the production line."  *Id.*

during the damages phase of the trial." 915 F.2d at 1481. As previously discussed, there is no evidence of a collective bargaining agreement or employment contract in this case. Accordingly, *Kohlheim* is distinguishable from this case and, under the applicable statutes and regulations, Vinson Guard is not entitled to a set-off for previously paid extra overtime premiums, if any were actually made.

### D.    Mr. Jarmon's Demand for Liquidated Damages and Attorney's Fees

Mr. Jarmon moved for summary judgment on the issue of damages, liquidated damages, and attorney's fees. The FLSA provides: "Any employer who violates the provisions of [the FLSA] . . . shall be liable to the . . . employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Also, the FLSA mandates that a successful plaintiff is entitled to a reasonable attorney's fee to be paid by the defendant. *Id.*   The norm is that a successful plaintiff is entitled to liquidated damages. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1282 (11th Cir. 2008) ("When the jury finds an employer has violated the FLSA and assesses compensatory damages, the district court generally must add an award of liquidated damages in an equal amount.").

"However, the district court has discretion to reduce or deny liquidated damages if the employer shows to the satisfaction of the court that the act or omission

giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA." *Id.* (internal marks and citations omitted). "An employer who violates the FLSA's overtime provision carries the burden of proving its entitlement to the safe harbor." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008) (citing *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987)). "To satisfy the good faith requirement, an employer must show that it acted with both objective and subjective good faith." *Id.* In the present case, Vinson Guard has asserted a good faith defense, and Mr. Jarmon has challenged it.

At this point in the proceedings, however, the court will not engage in a discussion of whether Mr. Jarmon is entitled to actual or liquidated damages in this case or state that an award of attorney's fees is or is not appropriate because such an exercise is premature. The question of liability remains to be decided at trial. Accordingly, Mr. Jarmon's Motion for Partial Summary Judgment as to damages, liquidated damages, and attorney's fees is due to be **DENIED** as untimely at this juncture.

### E. Mr. Jarmon's claim that Vinson Guard "willfully" violated the FLSA must also go to a jury.

To establish that an FLSA violation was willful, "the employee must prove by

a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162-63 (11th Cir. 2008) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "Reckless disregard" is defined as "failure to make adequate inquiry into whether conduct is in compliance with the Act." *Id.* (quoting 5 C.F.R. § 551.104). An employer can be found to have committed a willful violation of the FLSA "when the employer did not knowingly violate the FLSA; rather, it may apply when it simply disregarded the possibility that it might be violating the FLSA." *Allen*, 495 F.3d at 1324. That said, "[i]f an employer acts unreasonably but not recklessly in determining its legal obligation under the FLSA, then its actions should not be considered willful[.]" *Id.* Willfulness cannot "be based on nothing more than negligence[.]" *McLaughlin*, 486 U.S. at 135. "The determination of willfulness is 'a mixed question of law and fact.'" *Allen*, 495 F.3d at 1324 (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908 (9th Cir. 2003)).

In the present case, there cannot be a determination of willfulness (or nonwillfulness) before there is a finding that Vinson Guard indeed violated the FLSA. Vinson Guard has offered evidence, through the deposition of Greg Carter, that it believed it was in compliance with the FLSA and that it took various steps to ensure

compliance.  (Deposition of Greg Carter, pp. 28-29).  On the other hand, the evidence of record, if believed by the trier of fact, could reasonably lead one to the conclusion that Vinson Guard acted with reckless disregard and, therefore, that it willfully violated the FLSA.  That issue is one for the jury to sort out.

Normally, a willfulness determination is necessary only to determine the applicable statute of limitations.  *See*, *e.g.*, *Morgan*, 551 F.3d at 1282.  However, in this particular case, Mr. Jarmon's claim that Vinson Guard willfully violated the FLSA is material to the issue of liquidated damages.  "[I]n an FLSA case a jury's finding . . . that the employer acted willfully precludes the court from finding that the employer acted in good faith when it decides the liquidated damages question."  *Id.* (quoting *Alvarez Perez*, 515 F.3d at 1166).  The matter of willfulness is not properly adjudicated on summary judgment in this case and, if it is ever reached by a jury, a jury's determination of that claim may dictate this court's liquidated damages analysis.

## CONCLUSION

For the reasons stated herein, the court will order as follows:

(1)     The report and recommendation of the magistrate judge (doc. 48) is due to be **REJECTED**.

(2)     Plaintiff Mario Jarmon's general objection that the report and

recommendation should be reconsidered and rejected by this court is due to be **SUSTAINED**.  Mr. Jarmon's remaining objections have not been specifically addressed and are **MOOT**.

(3)    Defendant Vinson Guard's Motion for Summary Judgment (doc. 28) is due to be **GRANTED IN PART** in favor of Defendant Vinson Guard and against Plaintiff Mario Jarmon as to the state law claims of conversion (Count Two) and breach of contract (Count Three) asserted by Mr. Jarmon against Vinson Guard.  The Motion for Summary Judgment is due to be otherwise **DENIED**.

(4)    Plaintiff Mario Jarmon's Motion for Partial Summary Judgment (doc. 31) is due to be **DENIED**.

A separate Order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 13th day of July, 2010.


**VIRGINIA EMERSON HOPKINS**
United States District Judge