## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARIO JARMON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:08-CV-2106-VEH** |
| | ) | |
| **VINSON GUARD SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Plaintiff Mario Jarmon's ("Jarmon")
Motion for Attorneys' Fees and Costs. (Doc. 96). Also before the Court is Vinson
Guard Services, Inc.'s ("Vinson Guard") Motion for Costs pursuant to Federal Rule
of Civil Procedure 68. (Doc. 97). For the reasons discussed in this Memorandum
Opinion, Jarmon's Motion for Attorneys' Fees and Costs is due to be granted and
Vinson Guard's Motion for Costs is due to be denied.

## I.   BACKGROUND

Jarmon commenced this lawsuit against his former employer, Vinson Guard,
on November 12, 2008. (Doc. 1). Jarmon, who was an hourly employee of Vinson
Guard, alleged that Vinson Guard willfully violated the overtime provisions of the
Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, by failing to compensate him

for all overtime hours he worked while in Vinson Guard's employ.  (*Id.* at ¶¶ 20-21).

Specifically, Jarmon contended that he was not paid overtime for 13.75 hours of

work, for certain on-call time, and for taking work related calls on his company cell

phone while he was not on duty.  Also, Jarmon brought a state law claim for

conversion based on allegations that Vinson Guard wrongfully "withheld certain

sums" from his earned wages and used those funds for its own benefit (*id.* at ¶¶ 23-

24) and a state law claim for breach of contract because of Vinson Guard's alleged

failure to pay all money owed to Jarmon pursuant to an agreement between the parties

(*id.* at ¶¶ 27-29).  On September 3, 2009, in his response to Defendant's Motion to

Summary Judgment, Jarmon conceded that his state law claims were due to be

dismissed (doc. 39 at 20) and the Court granted summary judgment to Vinson Guard

on these claims on July 13, 2010 (doc. 53).

On July 7, 2009, Vinson Guard served Jarmon with an offer of judgment "for

a sum, including costs now accrued and reasonable attorneys' fees of SEVEN

THOUSAND FIVE HUNDRED ($7,500.00) DOLLARS." (Doc. 97-1 at 6).  Jarmon

did not accept this offer.  (*Id.* at 2).

A four-day jury trial was held beginning on May 31, 2011.  The Court

instructed the jury that it had determined that Vinson Guard had admitted it had not

paid Jarmon for 7.5 hours of overtime that Jarmon worked on October 7, 2008, and,

2

therefore, the jury could not award Jarmon as damages less than $90.00 (7.5 hours at $12.00 per hour).  (Doc. 95 at 12-13).  The jury awarded Jarmon $1,110.00 in damages.  (Doc. 90).  On June 30, 2011, the Court entered a Partial Final Judgment Order rejecting Vinson Guard's affirmative good faith defense and entering judgment in favor of Jarmon and against Vinson Guard in the amount of $2,200.00, of which $1,100.00 was awarded as unpaid compensation, and $1,100.00 was awarded as liquidated damages.  (Doc. 94).

## II.   ANALYSIS

### A.   Jarmon's Motion for Attorneys' Fees and Costs

Jarmon's counsel seeks $136,792.50 in attorney's fees and $2,309.70 in costs. (Doc. 96 at 2).  The FLSA authorizes an award of attorney's fees and costs under 29 U.S.C. § 216(b), which states, "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  This provision has been interpreted to mean that "fee awards [are] mandatory for prevailing plaintiffs." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985); *see also Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987) ("Section 216 provides for an award of attorney's fees, as opposed to granting the court discretion in awarding such fees, to the prevailing plaintiff in FLSA cases.").

3

An attorney's fee award is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). "This 'lodestar' may then be adjusted for the results obtained." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). "Although a district court has wide discretion in performing these calculations, '[t]he court's order on attorney's fees must allow meaningful review-the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation.'" *Id.* (quoting *Norman v. Hous. Auth.*, 836 F.2d 1292, 1304 (11th Cir. 1988)) (internal citation omitted). The Eleventh Circuit has applied this method in the FLSA context, incorporating the factors used in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989). *Kreager*, 775 F.2d at 1543-1544. Accordingly, the court will analyze the application for attorney's fees using the lodestar method.

### 1.      Reasonable Hourly Rate

To determine a reasonable hourly rate, the court looks to the attorney's skill, experience, and reputation. *Loranger*, 10 F.3d at 781.[1]  Also, the "party who applies

---

[1]  In determining this amount, the court may consider the twelve *Johnson* factors:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the

4

for attorney's fees is responsible for submitting satisfactory evidence to establish both that the requested rate is in accord with the prevailing market rate and that the hours are reasonable." *Duckworth v. Whisenant*,  97 F.3d 1393, 1396 (11th Cir. 1996). Typically, "[s]atisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299.  However, the court may use its own discretion and expertise to determine the appropriate hourly rate to apply for an attorney's fee award.  *See Loranger*, 10 F.3d at 781 ("A court, however, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." (internal quotation omitted)); *see also Swisher v. The Finishing Line, Inc.*, No. 6:07-cv-1542-Orl-28UAM, 2008 WL 4330318, at *6 (M.D. Fla. Sept. 22, 2008) (citing *Loranger* and *Norman* when the movant for attorney's fees in an FLSA case did not provide enough information for the court to establish whether the rate was reasonable and, on its own initiative,

---

preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Silva v. Miller*, 547 F. Supp. 2d 1299, 1305 n. 8 (S.D. Fla. 2008) (citing *Schafler v. Fairway Park*, 147 Fed. Appx. 113 (11th Cir. 2005); *Johnson*, 488 F.2d at 717-719).

compared requested rate to rates awarded in other similar cases in the jurisdiction, including those in which the attorney had participated).

Here, Jarmon's counsel initially only provided the court with their affidavits and their attorney fee calculation charts to establish that the requested fee is reasonable.  (Docs. 96-2, 96-4).  The time records list with particularity each task completed in litigating this case, the date the action was undertaken, and the hours expended on each task.  (Doc. 96-2).  A rate of $375.00 per hour is assigned to Kirby D. Farris ("Farris"), $300.00 per hour to D. Brett Turnbull ("Turnbull"), and $250.00 per hour to both Robert Barber ("Barber") and Brad Medaris ("Medaris").  (Doc. 96 at 2).  Jarmon's reply in support of the motion was accompanied by the affidavits of John Haley ("Haley") and David Arendall ("Arendall").  Haley, who has thirty-six years of experience in litigation including claims involving the FLSA, states that based on his experience and his understanding of this case, the hourly rate and total number of hours claimed by Farris and Turnball are reasonable.  (Doc. 104-1 at ¶¶ 1, 4).  Haley opines that a reasonable hourly billing rate for an FLSA case in this area is between $375.00 to $550.00 for an attorney with more than ten years experience, and between $250.00 to $350.00 for an attorney with less than ten years experience.  (*Id.* at ¶¶ 5-6).  Arendall, a member of the Alabama bar for thirty-six years and who has  experience in FLSA cases, states that the prevailing market rate in Alabama for

6

attorneys in cases such as this ranges from $200 to $550 per hour.  (Doc. 104-2 at ¶¶ 2, 5).  Arendall believes that an hourly rate of $375 for Farris and of $300 for Turnbull is a reasonable rate for this case.  (*Id.* at ¶ 9).

Farris asserts that he customarily receives $375.00 per hour for his services when successful, but fails to list any of those cases.  (Doc. 96-4 at 2).  The Court's own independent research shows that Farris is the managing partner at Farris, Riley & Pitt, L.L.P.  *See* http://www.frplegal.com/lawyer-attorney-1542890.html (last visited Aug. 11, 2011).  Farris was admitted to the Alabama bar in 1994.  *See* http://www.alabar.org/directory/dirDisplay.cfm?URLId=2.242T4nR07g85K_&-AUi (last visited Aug. 11, 2011).  Farris avers that he has represented dozens of clients in FLSA claims similar to those made by Jarmon.  (Doc. 96-4 at 1).

Turnbull asserts that he customarily receives $300.00 per hour for his services when successful, but fails to list any of those cases.  (*Id.* at 2).  The Court's own independent research shows that Turnbull is an associate at Farris, Riley & Pitt, L.L.P. *See* http://www.frplegal.com/lawyer-attorney-1543010.html (last visited Aug. 11, 2011).   Turnbull was admitted to the Alabama bar in 2005.  *See* http://www.alabar.org/directory/dirDisplay.cfm?URLId=2O5Y669pDB4r3PTz&-8 CNYdoz (last visited Aug. 11, 2011).  Turnbull avers that he has represented dozens of clients in FLSA claims similar to those made by Jarmon.  (Doc. 96-4 at 3).

Both Barber and Medaris assert that they customarily receive $250.00 per hour for their services when successful, but fail to list any of those cases. (*Id.* at 6, 9). The Court's own independent research shows that Barber and Medaris are partners in the firm Barber Medaris LLC. *See* http://barbermedaris.com (last visited Aug. 11, 2011). Both Barber and Medaris were admitted to the Alabama bar in 2005. *See* http://www.alabar.org/directory/dirDisplay.cfm?URLId=1v0>6S4bRR8J0sBY &-8CNYdoz (last visited Aug. 11, 2011); http://www.alabar.org/directory/dirDisplay.cfm?URLId=0R5r3Z88Ox5=8OM>&-;IWes (last visited Aug. 11, 2011). Barber and Medaris both aver that they have represented dozens of clients in FLSA claims similar to those made by Jarmon. (Doc. 96-4 at 5, 8). In a recent case involving FLSA claims, the undersigned awarded Barber and Medaris fees at a rate of $250 per hour. *Bartolon-Rodriguez v. Sitara, Inc.*, No. 2:09-cv-1815-VEH (Doc. 34 at 17-18) (N.D. Ala. July 20, 2010).

The evidence submitted by Jarmon in conjunction with this Court's own research has established that, although the requested rate is not reasonable for Farris or Turnbull, the requested rate is reasonable for Barber and Medaris. Recent cases from district courts within the Eleventh Circuit have concluded that an hourly rate of $250.00 is reasonable for attorneys with the experience of Turnbull, Barber, and Medaris, who all were admitted to the bar in 2005, and an hourly rate of $300.00 is

reasonable for an attorney with Farris's experience.  *See*, *e.g.*, *Baker v. Fid. Mortg. Direct Corp.*, No. 8:10-cv-2596-T-24 TBM, 2011 WL 1560665, at \*3-4 (M.D. Fla. Apr. 25, 2011) (finding hourly rate of $300 was reasonable in FLSA case for work performed by attorneys with sixteen and thirteen years experience); *Nipper v. Lakeland Hotel Investors, Ltd.*, No. 8:10-cv-498-T-33EAJ, 2010 WL 4941718, at \*5-6 (M.D. Fla. Nov. 30, 2010) (finding that $250.00 rate was reasonable in the Tampa market for work performed by attorney who had practiced labor and employment law for 20 years in an FLSA case in lieu of $340.00 fee requested); *Heaps v. Parker Oil Co.*, No. 5:06-CV-4637-CLS (Doc. 87 at 3) (N.D. Ala. Sept. 25, 2008) (finding that $250.00 rate was reasonable as to work performed in the Northern District of Alabama in an FLSA proceeding in lieu of $300.00 rate requested); *see also Swisher*, 2008 WL 4330318, at \*6 (finding that a rate of $250.00 per hour was reasonable in the Orlando market for an FLSA case).  Additionally, this case presents fairly routine issues arising under the FLSA with a single plaintiff, and Plaintiff's counsel has substantial experience in litigating FLSA claims.  Thus, considering that the rate is in line with those awarded in other prior FLSA cases, the relative complexity of the matter, and the experience of the attorneys, the court finds that the hourly rate of $250.00 is a reasonable one for Turnbull, Barber, and Medaris and the hourly rate of $300.00 is a reasonable one for Farris.

### 2.      Reasonable Number of Hours

As a general matter, courts in the Eleventh Circuit determine the reasonable hours expended by "contemplat[ing] a task-by-task examination of the hours billed." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 429 (11th Cir. 1999).   In certain circumstances, this rule should not be followed, since the Eleventh Circuit also directs,  "[w]here fee documentation is voluminous, . . . an hour-by-hour review is both impractical and a waste of judicial resources." *Loranger,* 10 F.3d at 783.  In such cases, the district court may engage in "across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure," so long as it provides "a concise but clear explanation of its reasons for the reduction." *Id*.

### i.  Unsuccessful Claims

Vinson Guard asserts that the Court must deduct the hours spent by Jarmon on his state law claims which were voluntarily dismissed and his claims based on cell phone usage and mileage reimbursements which were not submitted to the jury for consideration.  (Doc. 102 at 22).

A computation of the hours reasonably expended should not include time spent on "discrete and unsuccessful" claims, but should include time spent on all claims that arise out of the same course of conduct and share a "common core of facts," even if a specific individual claim did not succeed. *Hensley v. Eckerhart*, 461 U.S. 424,

435 (1983).   The Eleventh Circuit has taken an expansive view in determining whether claims are related by a common core of facts.  *See Popham v. Kennesaw*, 820 F.2d 1570, 1579 (11th Cir. 1987) ("Because plaintiff's counsel is required to explore every aspect of the case, develop all the evidence and present it to the court, courts have expansively treated claims as being related.") (internal quotation omitted).  A court also should not discount an attorneys' fee award based on the court's rejection of an alternative legal ground when one of the grounds is accepted.  As the Supreme Court has stated:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.  Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.

*Hensley*, 461 U.S. at 441.

Jarmon concedes that, in fairness to Vinson Guard, the Court should reduce Jarmon's requested attorney fees in accordance with the effort and time spent on the two state law claims.  (Doc. 104 at 11).  However, the Court finds that Jarmon's claims relating to cell phone usage and mileage reimbursements share a "common core of facts" and the Court will not reduce the requested attorneys fee with regards to these claims.  In light of the above, the Court will deduct ten percent of the hours

11

claimed by Barber and Medaris prior to and on September 3, 2009, in its calculation of the reasonable hours expended, which it finds to be an appropriate percentage of time to allocate to the state law claims.  Barber and Medaris claim 136.16 hours prior to and on September 3, 2009, therefore, the Court will deduct 13.62 hours from the time claimed by Barber and Medaris.

### ii.  Duplicative Time

Vinson Guard asserts that 12.48 hours of work are not compensable as duplicative.  (Doc. 102-1 Ex. C).

A reduction for redundant hours "is warranted only if the attorneys are unreasonably doing the same work.  An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *ACLU of Ga.,* 168 F.3d at 432 (quoting *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir.1983)).  Additionally, "a fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." *Id.*

Upon review of the records of all of these attorneys, the Court finds that Vinson Guard's objection is without merit.  The records are sufficient for the Court

to find that they each attorney provided distinct contributions to the case.

### iii. Clerical Time

Next, the Court addresses Vinson Guard's contention that clerical work is not compensable. (Doc. 102 at 20). Vinson Guard claims that 38.45 hours which it designates as "clerical" should be entirely eliminated. (Doc. 102 Ex. C).

In *Johnson v. Georgia Highway Express, Inc.*, the court concluded:

> It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. <u>Such non-legal work may command a lesser rate</u>. Its dollar value is not enhanced just because a lawyer does it.

488 F.2d at 717 (emphasis added). However, in *Missouri v. Jenkins*, the Supreme Court explained in a footnote that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." 491 U.S. 274, 288 n.10 (1989); *see also United States v. Certain Real Property*, No. 5:06-CV-1102-IPJ, (Doc. 76 at 25) (N.D. Ala. May 29, 2008) ("Hours spent on purely clerical or secretarial tasks are unrecoverable overhead expenses.").

A substantial amount of time that Vinson Guard coded as "clerical" includes matters that only an attorney would perform. For instance, Medaris has a time entry on July 6, 2009, which lists that he held a telephone conference with a witness in

13

which he scheduled an appointment and then prepared an affidavit for that witness and then spoke with the client concerning the witness. (Doc. 102-1 Ex. C at 3). This amounted to 1.5 hours of time. *Id.* Although scheduling an appointment might be considered clerical, preparation for an affidavit is not a clerical task. The Court will not exclude this entire block of time merely because the attorney also discussed the timing of an appointment during their telephone call.

In light of the above standard, the Court recognizes that Jarmon seeks recovery for numerous clerical tasks that are not compensable. For instance, Medaris billed time when he "made copies of exhibits for depo."[2] (*Id.* at 4). In this instance, Medaris's work is merely administrative and is unrecoverable as an overhead expense. Thus, in calculating its reduction in the hours reasonably expended, the Court will deduct 11.16 hours from the time claimed by Barber and Medaris that it finds to be clerical work.

### iv. Lack of Specificity

Vinson Guard challenges 24.74 hours which it claims Jarmon has documented

-----

[2] This time entry on August 2, 2009, reads in full, "Prepared for deposition; made copies of exhibits for depo." (Doc. 102-1 Ex. C at 4). This entry amounted to 3.33 hours of time. Because only one portion of this entry was for clerical work, the Court has only deducted 50% of the claimed hours from the amount of hours reasonably expended. The Court has followed this same procedure with respect to the other challenged entries.

with insufficient specificity.  (Doc. 102-1 at Ex. C).

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours, [and] fee counsel should [maintain] records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.  "'[W]here that party presents inadequate documentation the court may determine a reasonable award based on its own experience.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (quoting *Mills by Mills v. Freeman*, 118 F.3d 727, 734 (11th Cir. 1997)).

Here, the Court finds that Jarmon has provided adequate documentation in some instances.  The Court's own review of entries Vinson Guard challenged as not sufficiently specific reveals several entries that are insufficiently detailed such that the Court cannot determine whether the time was reasonably spent.  However, Vinson Guard codes as insufficiently specific some entries that contain more than ample support for the time claimed.  For instance, one entry coded as insufficiently specific reads: "Added in new argument related to overpayment issue; lots of research on overpayment."  (Doc. 102-1 Ex. C at 5).  Jarmon's counsel cannot be expected to write an entire paragraph as to each and every task completed.  Entries such as those

15

quoted above are not insufficiently specific.

However, some entries do lack adequate detail.  For instance, Jarmon claims fees for "Two phone conversations with client."  (*Id.* at 1).  Entries such as these do not provide sufficient detail for the Court to determine whether such fees are reasonable.  Thus, in calculating its reduction in the hours reasonably expended, the Court will deduct as inadequately described 7.06 hours from the time claimed by Barber and Medaris and 6.9 hours from the time claimed by Turnbull.

### iv.  Excessive Time

Vinson Guard challenges certain time entries which it claims represents unnecessary time for an attorney with the experience claimed by Jarmon's counsel.  (Doc. 102-1 Ex. C).  One such entry reads, "Reviewed underpayment for the few days we had records for and based damages based upon this limited information."  (*Id.* at 2).  The time allocated to this entry was .5 hours.  (*Id.*).  Vinson Guard makes no suggestion as to how much time should be allocated to this or any other entry.

Upon review of the records of all of these attorneys, the Court finds that Vinson Guard's objection is without merit.  The records are sufficient for the Court to find that the time allocated to the challenged entries was reasonable.

### v.  Summary of Reasonable Hours Expended

Based on the above findings and  reasoning, the Court concludes that the

16

following hours were reasonably expended by Jarmon's attorneys for purposes of arriving at the lodestar.

| | |
|---|---|
| Farris | 57.50 |
| Turnbull | 95.45 |
| Barber/Medaris | 306.26 |

### 3.      Lodestar Calculation

Multiplying the hours reasonably expended by the reasonable hourly rates, the Court finds that the following amounts represent the lodestar calculation.

| | |
|---|---|
| Farris | $17,250.00 |
| Turnbull | $23,862.50 |
| Barber/Medaris | $76,565.00 |

### 4.      Adjustments to the Lodestar

"After determining the lodestar amount as above, the court is entitled to adjust the amount of final fees awarded in light of the results obtained through the litigation." *Duckworth*, 97 F.3d at 1399. "If the court determines that the result obtained was an excellent result, then the award of fees 'will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.'" *Villano*, 254 F.3d at 1308 (quoting *Hensley*, 461 U.S. at 435).

The Eleventh Circuit provided the Court with particularly meaningful guidance in *Norman v. Housing Authority of Montgomery* when it wrote:

17

> If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion. *Id.* A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours. It is improper to make the reduction based on a simple ratio of successful issues to issues raised.

836 F.2d at 1302 (internal citations omitted). In accordance with the Eleventh Circuit's guidance in *Norman*, the Court looks to the scope of the litigation as a whole, focusing on the significance of the overall results achieved in light of the substantial hours expended in pursuing this case.

Vinson Guard argues that the Jarmon had very limited success and that a complete denial of the application for fees is warranted. (Doc. 102 at 13). The Court believes that a reduction in the lodestar is due, given the ultimate results obtained and the reasonable hours expended; however, Jarmon is entitled to some amount of attorneys' fees.

Ultimately, in comparison to what he initially sought to achieve, Jarmon's success was only modest at best. Although Jarmon did not specify an amount in his prayer for relief, it is clear from the conferences with the parties and from the amount of work undertaken by the attorneys in this case that Jarmon sought a much higher

18

number than the $2,200.00 he was awarded.

Jarmon points out that Vinson Guard vigorously defended this case, thereby causing a substantial increase in the hours expended on this matter.  (Doc. 104 at 6-7). Despite the fact that Vinson Guard contributed to the lodestar sought for this case, in looking at the results obtained, the Court cannot, in good conscience, find that the results obtained were "excellent" and award the full lodestar amount.  Instead the Court finds that the results obtained justify a substantial reduction to the lodestar based on the comparatively small damages recovered.  *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 558 (7th Cir. 1999) (reducing the lodestar in an FLSA case when fees were substantially larger than the plaintiff's recovery and noting that "although the fee award need not be proportionate to the amount of damages a plaintiff actually recovers, it is a factor that a court should consider when contemplating a reduction of the modified lodestar amount.").  The lodestar should be reduced by seventy-five percent (75%).  The Court believes this to be the maximum amount of a reasonable fee award, given the results obtained in this case. Accordingly, Jarmon's counsel is due to be awarded the following amount in attorneys' fees:

| | |
|---|---|
| Farris | $4,312.50 |
| Turnbull | $5,965.63 |
| Barber/Medaris | $19,141.25 |

19

**TOTAL ATTORNEYS' FEES:**      $29,419.38

The Court believes that a seventy-five percent (75%) reduction is warranted and is in line with previous Eleventh Circuit decisions that have reduced the lodestar based on limited success.  In *Andrews v. United States*, the Eleventh Circuit found that a district court abused its discretion when it did not consider limited success in determining whether to reduce the lodestar.  122 F.3d 1367, 1375-76 (11th Cir. 1997). The plaintiffs in *Andrews* were due to receive attorneys' fees for prevailing on their CERCLA claims.  However, the plaintiffs' CERLCA recovery amounted for only 3% of the total award, and it was only 1% of what the plaintiff sought initially.  *Id.* The district court reduced the award by 78% only because 22% of the plaintiffs had prevailed on the CERCLA claims.  *Id.* at 1376.  Rejecting even this substantial reduction, the Eleventh Circuit wrote:

> [T]he district court did not consider that plaintiffs prevailed on only one of their three CERCLA claims and their monetary award on that claim was quite small. Instead, the district court awarded plaintiffs fees and costs totaling nearly four times the amount of their CERCLA award. Although the Supreme Court has rejected the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers, this was not a civil rights action. As noted, the best-and perhaps only-measure of plaintiffs' success on their CERCLA claims was their monetary damages award.

*Id.* (internal quotation, alteration, and citations omitted).   Accordingly, the court

found that the district court had abused its discretion in  failing to consider the plaintiffs' minimal success.  *Id.*

Although *Andrews* is not an identical case to the current one, the Court does find it to be informative.  The Court recognizes that there are important policy implications at stake in an award of attorneys' fees under the FLSA (and under CERCLA) and that Congress has authorized such fees in order to assure that private parties can enforce their rights, but this fact alone does not mean that Jarmon is now entitled to all of the fees requested in this case.

Although Jarmon ultimately succeeded, he recovered only a portion of the damages initially sought.  Thus, as in *Andrews*, the Court finds that the limited nature of Jarmon's recovery is perhaps the best measure of determining his success.  In fact, the Court believes that the total attorneys' fees awarded are adequate, given the limited nature of Jarmon's success.  Nevertheless, the Court awards these fees in recognition of at least a partial victory against a determined adversary.

### 5.    Costs

Jarmon seeks $2,309.70 in costs.  (Doc. 96 at 2).  These costs constitute the filing fee charged by the Court, court reporter fees for depositions, and copying expenses.  (Doc. 96-3).  The Court finds that Jarmon is due to be awarded these reasonable costs.  *See* 28 U.S.C. § 1920.

21

**B.    Vinson Guard's Motion for Costs**

Vinson Guard argues that, because it made an offer of judgment pursuant to Federal Rule of Civil Procedure 68(a) and the final judgment against it was less than the amount offered, Jarmon must bear Vinson Guards's costs incurred after the Rule 68 offer was made on July 7, 2009.  (Doc. 97).  Rule 68(a) provides that "[a]t least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued."  Pursuant to Rule 68(d), "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."

On July 7, 2009, Vinson Guard served Jarmon with an offer of judgment "for a sum, <u>including costs now accrued and reasonable attorneys' fees</u> of SEVEN THOUSAND FIVE HUNDRED ($7,500.00) DOLLARS."   (Doc. 97-1 at 6) (emphasis supplied).  Jarmon did not accept this offer.  (Doc. 97-1 at 2).  At the time of the offer, Jarmon had already incurred costs in the amount of $350, representing the filing fee.  (Doc. 96-3).  Additionally, Jarmon's attorneys had already expended 54.41 hours litigating the case, of which, the Court finds 47.44 recoverable.  (Doc. 96-2 at 8-11).  Jarmon obtained a judgment after a jury trial in the amount of $2,220.00.  (Doc. 94).

22

Thus, the Court finds that Jarmon did not recover less than the $7,500.00 offer, when costs and attorney's fees are taken into account.   Therefore, Vinson Guard is not entitled to recover costs.

## III.   CONCLUSION

The Court finds that Vinson Guard's Motion for Costs is due to be **DENIED** and Jarmon's Motion for Attorneys' Fees and Costs is due to be **GRANTED**. Consistent with the reasoning in this Memorandum Opinion, the Court finds that the following amounts are due to be awarded to Jarmon as attorneys' fees and costs:

**Total Attorneys' fees:**   $29,419.38

**Total Costs:**          $2,309.70

**DONE** and **ORDERED** this the 12th day of August, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

23